IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MYKLE BROOKS POOLE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: LKG-21-2314 |
| WARDEN CRAIG ROWE, et al., | ) Dated: July 11, 2022 |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Plaintiff *pro se* Mykle Brooks Poole brings this civil rights action against Warden Craig Rowe, Deputy First Class Robert Reid, and Deputy First Class Michael Carbaugh (the "Defendants").[1]  ECF No. 1.  On February 28, 2022, Defendants moved to dismiss the complaint or, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56.  ECF No. 14.  This motion is fully briefed.  ECF Nos. 16, 17.  For the reasons discussed below, the Court (1) **GRANTS** Defendants' motion and (2) **DISMISSES** the complaint.

### II.   FACTUAL BACKGROUND

The June 24, 2021, Incident

In the complaint, Plaintiff alleges that, on June 24, 2021, between approximately 2 and 5 p.m. and while in protective custody at Washington County Detention Center ("WCDC"), he was attacked by another inmate when Defendants Reid and Carbaugh were distributing commissary.  ECF No. 1 at 2; ECF No. 1-1 at 1.  Specifically, Plaintiff alleges that Defendant Reid failed to close his cell door after giving plaintiff his commissary.  ECF No. 1-1 at 1.  Defendant Carbaugh subsequently called for another cell to be opened.  *Id.*  And so, Plaintiff alleges that Inmate Tape,

---

[1] Defendant the State of Maryland was not served and shall be dismissed without prejudice.

the inmate in cell #2, ran into his cell and assaulted him while he was putting his commissary away. *Id.*

Defendants Reid and Carbaugh broke up the fight and Defendant Carbaugh escorted Plaintiff to medical for evaluation. *Id.* Plaintiff alleges that Defendants Reid and Carbaugh are veteran deputies at WCDC and knew that their error risked him serious injury. *Id.* As a result of this incident, Plaintiff alleges that he suffered a swollen and "busted" eye for which he continues to receive pain medication and has permanent eye damage. *Id.* at 3.[2]

On or about June 27, 2021, Plaintiff filed a grievance regarding the June 24, 2021, Incident and Captain Moore responded to this grievance on June 29, 2021. *Id.* at ¶ 5; *see* ECF No. 14-3 at 47-49. Plaintiff appealed Captain Moore's response to Warden Rowe on July 16, 2021. *Id.* Warden Rowe subsequently concluded that appropriate personnel actions were taken against Defendants Reid and Carbaugh and he denied the appeal. *Id.*; ECF No. 14-3 at 50.

It is undisputed that Plaintiff has been placed in disciplinary segregation on several occasions during his incarceration at WCDC. *See* ECF No. 14-3 at 15-24 (Plaintiff placed in disciplinary segregation from December 27, 2020, to February 24, 2021, for refusing orders, committing an act that posed a risk to security, and making threats to staff); *id.* at 30 (Plaintiff placed in segregation on January 19, 2021); *id.* at 33-34 (Plaintiff in disciplinary segregation from February 24, 2021, to April 19, 2021, for extortion, blackmail, and/or fraud; an act posing a risk to safety and security; and planning or attempting to commit a "category 1" prohibited act.); *id.* at 36-41 (Plaintiff placed in disciplinary segregation from May 11, 2021 to June 9, 2021, for an incident in which he put excrement into another inmate's laundry bag.). It is also undisputed that, on April 25, 2021, Plaintiff requested to be placed in protective custody based on "generalized concerns for his safety, with no indication that those concerns arose from his relationship with Inmate Tape." ECF No. 14-2 at ¶ 8; ECF No. 14-3 at 35. In this regard, Plaintiff signed forms stating he did not have any concerns about leaving his cell for recreation

---

[2] The C-Pod at WCDC is a segregation unit which houses inmates in protective custody and disciplinary segregation. Rowe Affidavit, ECF No. 14-2 at ¶ 4. Warden Rowe attests to the same version of events as stated by Plaintiff in the complaint regarding the June 24, 2021, Incident. *See id.* To support his complaint, plaintiff attaches a letter from Captain Moore acknowledging the assault and that staff should not have opened both cell doors simultaneously and advising that Inmate Tape would be charged with a rule violation. *Id.* at 7

with other protective custody inmates on May 6, 2021, and July 22, 2021, respectively.  ECF No. 14-2 at ¶ 9; ECF No. 14-3 at 46.

Lastly Rowe Warden represents to the Court that Plaintiff had not identified Inmate Tape as an enemy and WCDC had no knowledge of any prior altercations between the two, nor had plaintiff filed any grievances regarding Inmate Tape prior to the June 24, 2021, Incident.  ECF No. 14-2 at ¶¶ 6-7.  Following the June 24, 2021, Incident, Inmate Tape was placed on Plaintiff's enemies list.  *Id.* at ¶ 10.

On October 18, 2021, Plaintiff was transferred to Maryland Correctional Training Center.  Ex. B, ECF No. 14-3 at 13.

### III.  LEGAL STANDARDS

#### A.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citations omitted).

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  ECF No. 18.  Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious."  *Id.* at 261.

Because Defendants' motion is titled as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat it as one for summary judgment and rule on that basis.  And so, the Court will review Plaintiff's claims under the Rule 56(a) standard and will consider the exhibits and declaration filed in support of the Defendants' motion.

### B.      Fed. R. Civ. P. 56

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015).  At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Court is mindful that Plaintiff is proceeding in this matter *pro se*.  The Court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But, liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  And so. The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

4

## IV. ANALYSIS

The Court GRANTS Defendants' motion for summary judgment for two reasons.

### A. Plaintiff Cannot Prevail On A Failure To Protect Claim

First, Defendants persuasively argue that Plaintiff cannot prevail on his failure to protect claim. Section 1983 imposes civil liability on a person who, under color of state law, deprives any citizen of the United States or other person under the jurisdiction thereof of any right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. The United States Court of Appeals for the Fourth Circuit has held that Section 1983 "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393-94, (1989)). Liberally construing the complaint in this matter, the Court reads the complaint to assert a failure to protect claim under Section 1983. When raised by a pretrial detainee, such a claim is analyzed under the Fourteenth Amendment and the two-part inquiry established in *Farmer v. Brennan*, 511 U.S. 825 (1994). *See Brown v. Harris*, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying *Farmer* to a pretrial detainee's failure to protect claim); *see also Perry v. Barnes*, Civ. No. PWG-16-705, 2019 U.S. Dist. LEXIS 34596, at *3 (D. Md. March 5, 2019) (same).

"For a claim based on a failure to prevent harm, a person must [first] show that he is being detained, or incarcerated 'under conditions posing a substantial risk of serious harm.'" *See Brown*, 240 F.3d at 389 (quoting *Farmer*, 511 U.S. at 834). Given this, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014) (citation and internal quotation marks omitted). This objective inquiry requires the Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). And so, a genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016).

Here, Defendants do not dispute Plaintiff's claim that he suffered permanent eye damage due to the June 24, 2021, Incident. Captain Moore's response to Plaintiff's grievance also acknowledges that Defendants Reid and Carbaugh violated WCDC policy when they failed to close Plaintiff's cell door before opening Inmate Tape's cell. And so, Plaintiff has satisfied the first part of the test under *Farmer*.

But, plaintiff fails to satisfy the second prong of the *Farmer* test. To do so, Plaintiff must show that the prison official involved had "a sufficiently culpable state of mind," which, in this context, "is one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). This subjective inquiry requires evidence that the official had actual knowledge of an excessive risk to the prisoner's safety—"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837. Given this, Plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence,'" and "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128 (quoting *Farmer*, 511 U.S. at 842). This Court has recognized that actual knowledge of a substantial risk does not alone impose liability. *Hopkins v. Maryland*, WMN-99-2216, 2000 WL 1670991, at *3 (D. Md. Sept. 26, 2000) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 338-340 (4th Cir. 1997)) (holding that "a prison official cannot be found liable under the Eighth Amendment for failing to protect an inmate unless the official knows of an excessive risk of danger to inmate health and safety, and the official knowingly and deliberately acts, or fails to act, in a manner that uniquely increases the risk"). And so, when prison officials respond reasonably to a risk, they may be found to be free of liability. *Farmer*, 511 U.S. at 844.

Here, when considered in the light most favorable to Plaintiff, the undisputed material facts in this case make clear that Plaintiff cannot show that Defendants Reid and Carbaugh were deliberately indifferent to his health or safety. At most, the undisputed material facts show that Defendants Reid and Carbaugh were negligent by failing to close Plaintiff's cell door before opening another cell. There is no evidence before the Court to show that these Defendants were aware that opening Inmate Tape's cell would uniquely pose a risk to Plaintiff. *Rich*, 129 F.3d at 340 n.2 (finding that an officer's actual knowledge that an inmate was generally in danger, but absent of the knowledge that their actions uniquely increased this risk, was insufficient to satisfy

6

*Farmer* and could only be categorized as negligent). Indeed, it is undisputed that, prior to the June 24, 2021, Incident: (1) Plaintiff had not identified Inmate Tape as an enemy; (2) WCDC had no knowledge of any prior altercations between the two; and (3) Plaintiff had not filed any grievances regarding Inmate Tape. ECF No. 14-2 at ¶¶ 6-7; *see generally* Pl. Resp. Because the undisputed material facts show that the conduct of Defendants Reid and Carbaugh are does not rise to the level of deliberate indifference, these Defendants are entitled to summary judgment in their favor on Plaintiff's failure to protect claim.[3] *See Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 835) ("Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'").

### B.     Plaintiff Cannot Prevail On His Respondeat Superior Claim

Plaintiff's claim against Warden Rowe is also problematic. Defendants persuasively argue that summary judgment should be entered in their favor with regards to his claim, because Plaintiff neither makes specific allegations against Warden Rowe in the complaint, nor states sufficient facts to establish supervisory liability in this case. ECF No. 14-1 at 17. The Fourth Circuit has held that doctrine of respondeat superior does not apply to claims asserting constitutional deprivations brought pursuant to Section 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Given this, liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). And so, supervisory liability under Section 1983 must be supported with evidence that: (1) the supervisor had actual or constructive

---

[3] In his response in opposition, Plaintiff argues that Defendants Reid and Carbaugh left his cell door open in retaliation, "because of them not understanding how to deal with my behavior and the fact that all I wanted to do is be left alone by myself or moved to a mental institution . . . ." ECF No. 16 at 2. The Court does not address this new claim of retaliation because an opposition to a dispositive motion is not a vehicle for amending a pleading. *Woodbury v. Victory Van Lines*, 286 F.Supp.3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint); *see also Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015).

knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Because Plaintiff fails to make any of these showings in this case, the Court also GRANTS Defendants' motion for summary judgment on Plaintiff's respondeat superior claim.

## V.    CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Defendants' motion for summary judgment;

2. **DISMISSES** the complaint; and

3. **DENIES-as-MOOT** Defendants' Motion for Extension of Time to File Answer (ECF;

Judgment is **ENTERED** accordingly.

The Clerk **SHALL PROVIDE** a copy of this Memorandum Opinion and Order to each party and **CLOSE** this case.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge